# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

HARTFORD FIRE INSURANCE COMPANY, )
             )
      Plaintiff,       )
             )    No. 14 C 6080
   v.            )
             )    Judge Sara L. Ellis
THERMOS L.L.C., JENNY MILMAN, and )
ELLEN THOMAS,        )
             )
      Defendants.     )
_____ )
THERMOS L.L.C.,        )
             )
      Third-Party Plaintiff,   )
             )
   v.            )
             )
THE TRAVELERS INDEMNITY COMPANY )
OF AMERICA and NATIONAL FIRE   )
INSURANCE COMPANY OF HARTFORD, )
             )
      Third-Party Defendants.   )

## OPINION AND ORDER

In this coverage action, Thermos L.L.C. ("Thermos") seeks to recover defense and

indemnity costs from three of its insurers—Hartford Fire Insurance Company ("Hartford"), the

Travelers Indemnity Company of America ("Travelers"), and National Fire Insurance Company

of Hartford ("National Fire") (collectively, the "insurers")—arising from a putative consumer

class action lawsuit—*Milman v. Thermos LLC*, No. 13 C 7750 (N.D. Ill.) (the "*Milman*

lawsuit")—brought against Thermos in this district.[1]  The parties have filed cross-motions for

judgment on the pleadings or summary judgment [61, 64, 66, 69, 71, 73] regarding the duty to

defend, Thermos' claim that the insurers are estopped from denying coverage for the *Milman*

---

[1] Jenny Milman and Ellen Thomas were joined as interested parties but dismissed pursuant to stipulations
in which they agreed to be bound by the final judgment in this matter.  *See* Docs. 14, 19.

settlement, and Thermos' request for section 155 damages. The Court finds that the *Milman* complaint alleged claims that were potentially covered by the insurers' policies but, based on the insurers' representations that additional defenses must be considered, defers final decision as to whether the insurers had a duty to defend and whether the duty to defend was breached by each insurer. Similarly, the Court defers consideration of Thermos' estoppel argument until the duty to defend issue is resolved. But because the Court's present analysis of the duty to defend issue already demonstrates a bona fide coverage dispute and Thermos makes no argument to the contrary, the Court grants judgment to the insurers on Thermos' request for section 155 damages.

## BACKGROUND

### I.    The *Milman* Lawsuit

On August 16, 2013, Milman filed suit against Thermos in the United States District Court for the District of New Jersey. That case was voluntarily dismissed without prejudice on September 26, 2013. On October 29, 2013, the *Milman* lawsuit was filed in this court as a putative class action. The allegations in the *Milman* complaint are almost identical to those in the dismissed New Jersey action.

The plaintiffs in the *Milman* lawsuit alleged that Thermos manufactured two types of allegedly "leak-proof" bottles intended for use by young children. Doc. 12-1 ¶ 1. Although Thermos advertised the bottles as "leak-proof," inducing the plaintiffs and putative class members to buy the bottles, the bottles had a "tendency to leak" and thus Thermos' "development, marketing and sale of the Bottles violate[d] consumer protection laws, breache[d] [Thermos'] express warranties to Plaintiffs and the Class, and constitute[d] unjust enrichment." *Id.* The plaintiffs claimed that Thermos' bottles "leak from both the straw and the gap between the lid and the straw" and "because the 'push button lid' is easily triggered, the Bottles often pop

open, exposing the leaking straw and straw area." *Id.* ¶ 6. They further alleged that the leaks were "inherent in the design of the Bottles." *Id.* Because Thermos advertised its bottles as leak-proof, the plaintiffs contended that Thermos was able to price the bottles at a premium over other similar non-leak-proof children's bottles. But instead of being leak-proof, the plaintiffs allegedly found that "when the Bottles are inverted or shaken, liquid escapes from both: (i) the straw, and (ii) the gap between the straw and part of the lid surrounding the straw." *Id.* ¶ 35. The push-button lid also allegedly came open while in a diaper bag, for example, exposing the straw and leaking liquid. Reviews reproduced from Amazon.com reported "sticky juice everywhere," immediate leaks, and "puddles of milk." *Id.* ¶ 38. Milman specifically alleged noticing that, when placed in a diaper bag, the bottle "soak[ed] the other items in the diaper bag with liquid." *Id.* ¶ 45. Both Milman and Thomas alleged that if the bottles had not been advertised as leak-proof, they would not have purchased the bottles or at least would not have paid as much for them.

On January 3, 2014, Thermos moved to dismiss the complaint. On April 23, 2014, the court dismissed the plaintiffs' claim for injunctive relief but otherwise let the complaint proceed. The parties then participated in a successful settlement conference on August 14, 2014, with the plaintiffs filing for preliminary approval of the class action settlement on December 17, 2014. The court granted preliminary approval on December 23, 2014, with final approval following on May 27, 2015. For settlement purposes, the court certified the following class:

> All persons who purchased a Foogo® stainless steel vacuum-insulated straw bottle or a Foogo® plastic straw bottle in the United States at any time between January 1, 2007 and December 23, 2014 excluding (a) any such person who purchased for resale and not for personal or household use, (b) any officers, directors or employees, or immediate family members of the officers, directors or employees, of Thermos, and (c) the presiding judges and their immediate families.

Doc. 70-5 at 3. Class members received either monetary compensation or replacement Thermos products.

## II. The Insurance Policies

Thermos had commercial general liability coverage with three different insurers, Hartford, Travelers, and National Fire, over the relevant time period. Hartford issued liability policies to Thermos for the policy periods August 31, 2006 to August 31, 2007 and August 31, 2007 to August 31, 2008 (the "Hartford Policies"). *See* Doc. 68-11; Doc. 68-12. Travelers issued Thermos four commercial general liability policies between August 31, 2008 and August 31, 2012 (the "Travelers Policies"). *See* Doc. 18-4; Doc. 18-5; Doc. 18-6; Doc. 18-7. Finally, National Fire issued a commercial general liability policy to Thermos for the period covering August 31, 2012 to August 31, 2013 (the "National Fire Policy"). *See* Doc. 18-8. The relevant language of the insurance policies is the same, and so the Court will combine its recitation of these pertinent policy provisions here while providing appropriate citations to each policy.

All insurance policies provide that the insurers "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Doc. 68-11 at 69; Doc. 68-12 at 62; Doc. 18-4 at 19; Doc. 18-5 at 17; Doc. 18-6 at 15; Doc. 18-7 at 15; Doc. 18-8 at 8. The policies also provide that the insurers are required to defend Thermos in suits seeking such damages. Doc. 68-11 at 69; Doc. 68-12 at 62; Doc. 18-4 at 19; Doc. 18-5 at 17; Doc. 18-6 at 15; Doc. 18-7 at 15; Doc. 18-8 at 8. "Property damage" is defined as:

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

4

Doc. 68-11 at 86; Doc. 68-12 at 79; Doc. 18-4 at 51; Doc. 18-5 at 51; Doc. 18-6 at 50; Doc. 18-7 at 56; Doc. 18-8 at 20.  But the insurance only applies if the "'property damage' is caused by an 'occurrence.'"  Doc. 68-11 at 69; Doc. 68-12 at 62; Doc. 18-4 at 19; Doc. 18-5 at 17; Doc. 18-6 at 15; Doc. 18-7 at 15; Doc. 18-8 at 8.  An "occurrence" is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  Doc. 68-11 at 85; Doc. 68-12 at 78; Doc. 18-4 at 32; Doc. 18-5 at 30; Doc. 18-6 at 28; Doc. 18-7 at 28; Doc. 18-8 at 20.

The insurance policies contain several exclusions to which the insurance does not apply, including:

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

. . . .

### j. Damage to Property

"Property damage" to: . . .

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it. . . .

Paragraph[ ] (6) of this exclusion do[es] not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

### k. Damage To Your Product

"Property damage" to "your product" arising out of it or any part of it.

### l. Damage To Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

Doc. 68-11 at 70–72; Doc. 68-12 at 63–65; Doc. 18-4 at 22–23, 44; Doc. 18-5 at 20–21, 48; Doc. 18-6 at 18–19, 47; Doc. 18-7 at 18–19, 53; Doc. 18-8 at 8–11, 34–36. "Your product" is defined as:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

Doc. 68-11 at 86; Doc. 68-12 at 79; Doc. 18-4 at 33; Doc. 18-5 at 31; Doc. 18-6 at 29; Doc. 18-7 at 29; Doc. 18-8 at 21. "Your product" specifically includes "[w]arranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your product,'" as well as "[t]he providing of or failure to provide warnings or instructions." Doc. 68-11 at 86; Doc. 68-12 at 79; Doc. 18-4 at 33; Doc. 18-5 at 31; Doc. 18-6 at 29; Doc. 18-7 at 29;

Doc. 18-8 at 21. "Your work" means "[w]ork or operations performed by you or on your behalf" and "[m]aterials, parts or equipment furnished in connection with such work or operations." Doc. 68-11 at 86; Doc. 68-12 at 79; Doc. 18-4 at 33–34; Doc. 18-5 at 31–32; Doc. 18-6 at 29–30; Doc. 18-7 at 29–30; Doc. 18-8 at 21. "Your work" includes "[w]arranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work,'" and "[t]he providing of or failure to provide warnings or instructions." Doc. 68-11 at 86; Doc. 68-12 at 79; Doc. 18-4 at 33–34; Doc. 18-5 at 31–32; Doc. 18-6 at 29–30; Doc. 18-7 at 29–30; Doc. 18-8 at 21. "Impaired property" is defined as:

> tangible property, other than "your product" or "your work", that cannot be used or is less useful because:
>
> a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
>
> b. You have failed to fulfill the terms of a contract or agreement;
>
> if such property can be restored to use by:
>
> a. The repair, replacement, adjustment or removal of "your product" or "your work"; or
>
> b. Your fulfilling the terms of the contract or agreement.

Doc. 68-11 at 84; Doc. 68-12 at 77; Doc. 18-4 at 31; Doc. 18-5 at 29; Doc. 18-6 at 27; Doc. 18-7 at 27; Doc. 18-8 at 18–19.

## III. Notice of the *Milman* Lawsuit

### A. Hartford

Thermos notified Hartford of the New Jersey complaint by letter dated September 11, 2013. It then followed that notice with an email on November 14, 2013, providing Hartford with the complaint in the *Milman* lawsuit filed in the Northern District of Illinois. Hartford denied coverage on December 19, 2013. On January 31, 2014, Thermos sent a letter to Hartford

indicating its belief that Hartford's coverage denial was improper and requesting that Hartford withdraw the coverage denial and agree to pay defense costs in the *Milman* lawsuit. The letter further indicated that Thermos' internal records reflected that the bottles were first sold during Hartford's policy period. Hartford substantively responded on August 1, 2014, reiterating that its coverage position remained unchanged, that it had no duty to defend or indemnify Thermos, and that it would not participate in any settlement negotiations with the plaintiffs in the *Milman* lawsuit. Hartford then filed this case on August 7, 2014, a week before the *Milman* parties reached a settlement in that lawsuit.

### B. Travelers

Thermos informed Travelers of the New Jersey action on September 11, 2013. On September 30, Travelers responded, stating that the allegations did not trigger a defense or indemnification obligation and so Travelers would have no involvement in the matter. On November 14, Thermos informed Travelers that the *Milman* lawsuit had been filed in the Northern District of Illinois and forwarded the complaint to Travelers. On November 21, Travelers responded to Thermos, indicating again that there was no basis under the Travelers Policies for Travelers to defend or indemnify Thermos. Thermos filed a third-party complaint against Travelers on October 27, 2014.

### C. National Fire

Thermos sent National Fire a copy of the New Jersey complaint, which National Fire confirmed it received on September 16, 2013. National Fire then provided Thermos with a coverage denial letter for that complaint on October 7. Thermos filed a third-party complaint against National Fire on October 27, 2014.

**LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings after the complaint and answer have been filed. Fed. R. Civ. P. 12(c). When the movant seeks to "dispose of the case on the basis of the underlying substantive merits . . . . the appropriate standard is that applicable to summary judgment, except that the court may consider only the contents of the pleadings." *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993). The pleadings include the complaint, answer, and documents attached as exhibits to the complaint and answer. *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452–53 (7th Cir. 1998). The Court should grant a motion for judgment on the pleadings if "no genuine issues of material fact remain to be resolved" and the movant "is entitled to judgment as a matter of law." *Alexander*, 994 F.2d at 336.

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light

most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## ANALYSIS

### I.      Duty to Defend

To determine if an insurer has a duty to defend, the Court "must compare the facts alleged in the underlying complaint to the relevant provisions of the insurance policy." *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 860 N.E.2d 307, 314, 223 Ill. 2d 352, 307 Ill. Dec. 653 (2006).[2] The duty to defend is broader than the duty to indemnify, and an insurer may have to defend its insured even though coverage may not ultimately be found. *See Pekin Ins. Co. v. Wilson*, 930 N.E.2d 1011, 1017, 237 Ill. 2d 446, 341 Ill. Dec. 497 (2010). This is because the duty to defend arises if the facts alleged in the complaint "fall within, or potentially within, the policy's coverage." *Valley Forge*, 860 N.E.2d at 314–15. In other words, "the complaint need present only a possibility of recovery, not a probability of recovery." *Bituminous Cas. Corp. v. Gust K. Newberg Constr. Co.*, 578 N.E.2d 1003, 1006, 218 Ill. App. 3d 956, 161 Ill. Dec. 357 (1991). The duty to defend arises "even if the allegations are groundless, false, or fraudulent, and even if only one of several theories of recovery alleged in the complaint falls within the potential coverage of the policy." *Id.* at 315. An insurer may only refuse to defend if "it is clear from the face of the underlying complaint that the allegations set forth in the complaint fail to state facts that bring the case within, or potentially within, the coverage of the policy." *Id.* Any doubts as to the duty to defend are to be resolved in the insured's favor. *Hilco Tradings, LLC v.*

---

[2] The parties do not dispute that Illinois law applies to the insurance coverage issues before the Court. *See Auto-Owners Ins. Co. v. Websolv Computing Inc.*, 580 F.3d 543, 547 (7th Cir. 2009) ("Courts do not worry about conflict of laws unless the parties disagree on which state's law applies." (quoting *Wood v. Mid-Valley Inc.*, 942 F.2d 425, 427 (7th Cir. 1991)).

*Liberty Surplus Ins. Corp.*, 8 N.E.3d 166, 174, 2014 IL App (1st) 123503, 380 Ill. Dec. 235 (2014).

Here, the insurers argue that they had no duty to defend Thermos because the *Milman* complaint did not seek damages because of covered "property damage" caused by an "occurrence." They also argue that several policy exclusions preclude coverage. Thermos takes the opposite position, maintaining that the complaint included allegations of damage to third-party property and thus required the insurers to defend it in the *Milman* lawsuit.

### A.    Property Damage

First, the insurers argue that they had no duty to defend Thermos because the *Milman* complaint does not seek damages because of "property damage." "Property damage" is defined in all policies as "physical injury to tangible property" or "loss of use of tangible property that is not physically injured."[3]  Doc. 68-11 at 86; Doc. 68-12 at 79; Doc. 18-4 at 51; Doc. 18-5 at 51; Doc. 18-6 at 50; Doc. 18-7 at 56; Doc. 18-8 at 20.  Tangible property is considered physically injured "when the property is altered in appearance, shape, color or in other material dimension." *Travelers Ins. Co. v. Eljer Mfg., Inc.*, 757 N.E.2d 481, 496, 197 Ill. 2d 278, 258 Ill. Dec. 792 (2001).  "[L]oss of use coverage applies when there is permanent deprivation of use to a third-party's tangible property due to the insured's product." *Catlin Specialty Ins. Co. v. Parks Indus., LLC*, No. 14-cv-727, 2015 WL 300625, at *3 (N.D. Ill. Jan. 21, 2015).

The parties' dispute centers on whether the allegations of the complaint can be read to allege damage to property beyond the bottles themselves.  This is because it is well-established that "[a]n allegation of defective or faulty workmanship in the insured's own products does not, by itself, allege 'property damage' under a standard CGL policy." *Amerisure Mut. Ins. Co. v.*

---

[3] Although "tangible property" is not defined in the policies, Black's Law Dictionary defines it as "[p]roperty that has physical form and characteristics."

*Microplastics, Inc.*, 622 F.3d 806, 811 (7th Cir. 2010). Thus, any claims that the bottles were defective or for economic loss related to their purchase are not sufficient to trigger coverage under any of the insurance policies. *Id.*

The insurers contend that the *Milman* complaint does not include any facts that suggest that the plaintiffs were seeking to recover damages for injury to personal property or loss of use of tangible property, with the plaintiffs instead only pursuing the amount they and putative class members overpaid for the bottles. Specifically, the insurers point to the *Milman* complaint's allegations of injury and damages, in which the plaintiffs alleged, for example, that they were entitled to recover "monies spent to purchase the Bottles" and were "damaged in the amount of the purchase price of the Bottles they purchased." Doc. 12-1 ¶¶ 67, 85. According to the insurers, these allegations demonstrate that the complaint only sought benefit of the bargain damages.

Thermos responds, however, that the *Milman* complaint included allegations conceivably suggesting damages arising from "property damage." Thermos points to the allegation that Milman, one of the plaintiffs in the underlying action, "noticed that the Bottles would leak if placed in a diaper bag . . . . thus soaking the other items in the diaper bag with liquid." *Id.* ¶ 45. This, according to Thermos, demonstrates "physical injury to tangible property." Additionally, Thermos highlights the complaint's allegations regarding spilled milk, juice, and other liquids, arguing that this demonstrates a "loss of use of tangible property," with the milk and juice being the tangible property that could no longer be used once spilled. *See, e.g.*, *id.* ¶ 35 (alleging that "when the Bottles are inverted or shaken, liquid escapes" and "liquid will be released"); *id.* ¶ 36 (alleging that when a bottle is stored in a diaper bag and another item "grazes the push-button lid," the lid opens to expose the straw, "which in turn leaks liquid"); *id.* ¶ 38 (including reviews

from Amazon.com that discuss finding "sticky juice everywhere," immediate leaks from using the bottles, "milk . . . constantly dripping out of" the bottle, and "constantly cleaning up puddles of milk"). Thermos argues that the complaint need not explicitly request damages for this "property damage," as the allegations are sufficient to demonstrate potential liability for such damages, which is all that is required to trigger the insurers' duty to defend.

The question here is a close and difficult one. On the one hand, when setting forth its damages and injuries in connection with its specific claims, the plaintiffs tailored those statements to defects related to the bottles. *See, e.g.*, *id.* ¶ 67 (discussing "ascertainable loss in the form of, *inter alia*, monies spent to purchase the Bottles"); *id.* ¶ 77 (alleging that if plaintiff Thomas and the New York Class had "known that the Bottles were not actually leak-proof, they either would not have purchased the Bottles or would not have paid the price they paid for the Bottles"); *id.* ¶ 85 (plaintiffs and the class were "damaged in the amount of the purchase price of the Bottles they purchased and any consequential damages resulting from the purchases"); *id.* ¶ 89 (Thermos' misrepresentations "caused injuries to Plaintiffs and the Class because they would not have purchased the Bottles, or would not have paid as much as they did for the Bottles, if the true facts concerning the Bottles had been known"). This tailoring arguably could have been intentional. *See Medmarc Cas. Ins. Co. v. Avent Am., Inc.*, 612 F.3d 607, 615 (7th Cir. 2010) (noting that exclusion of allegations related to bodily injury in class action "is not a drafting whim (or mistake) on the part of the plaintiffs' attorneys, but rather a serious strategic decision to pursue only this limited claim" for "economic damages that resulted from the plaintiffs purchasing a product from which they cannot receive a full benefit because they were falsely led to believe that it was safe"). In *Avent*, the underlying complaint did not include allegations of actual bodily injury or property injury, it only suggested that the products at issue

created a *potential* for bodily injury, and the plaintiffs conceded that they only sought economic damages in response to a motion to dismiss. *Id.* at 609–11. Here, however, the *Milman* complaint includes specific allegations of property damage in addition to economic injury. *See* Doc. 12-1 ¶ 45 (alleging that bottles leaked and soaked items in diaper bag); *id.* ¶¶ 35, 36, 38 (discussing bottles spilling milk, juice, and other liquids, causing "puddles of milk" and "sticky juice everywhere"). Further, as discussed below, the *Milman* plaintiffs made no similar concession or limitation on damages as in *Avent*. Because allegations of property damage were included in the *Milman* complaint, the *Milman* plaintiffs were not foreclosed from pursuing these kinds of damages.

Indeed, the *Milman* plaintiffs never restricted their damages requests in their complaint to only economic damages. *See id.*, Prayer for Relief ¶ C (generally requesting an award of "damages"). And while their proposed class definition excluded those who suffered bodily injury, it did not include a similar exclusion for those who suffered property damage, meaning that damage to third party property and loss of use of milk, juice, and other liquids remained in play. *See id.* ¶ 54. Additionally, the request for "consequential damages resulting from the [bottle] purchases" with respect to the breach of express warranty claim could be read to include these damages. *Cf. Microplastics*, 622 F.3d at 811–13 (request for "consequential damages" did not trigger duty to defend where claim has "all the earmarks of a buyer's breach of contract claim for products that failed to meet the agreed specifications" and there was no indication of damage to anything other than the defective products themselves). But more importantly, the *Milman* complaint did not need to include a specific request for relief for covered property damage, as such a specific request is not required as long as the allegations of the complaint provide a potential for coverage. *See Sun Elec. Corp. v. St. Paul Fire & Marine Ins. Co.*, No. 94-

C-5846, 1995 WL 270230, at *4–5 (N.D. Ill. May 4, 1995) ("A claim for relief is not essential; only the allegations in the complaint must fall within the covered provisions."); *see also Travelers Ins. Cos. v. Penda Corp.*, 974 F.2d 823, 829 (7th Cir. 2002) (finding duty to defend where the underlying claim for lost profits could be read to include an attempt to recover for physical injury or loss of use of sample books or pages even though such damages were not explicitly requested, as the complaint stated that the sheets supplied by the insured were unusable and that the intended customer refused to pay for the sample books unless they were replaced). But the *Milman* complaint did include this request by alleging that, as a result of Thermos' misrepresentations, the plaintiffs (and the putative class) were led to purchase the bottles, which subsequently leaked and caused damage to items in a diaper bag and led to the loss of use of milk, juice, and other liquids.[4]

The insurers argue, however, that this is a hypothetical claim that should be ignored. *See, e.g.*, *Del Monte Fresh Produce N.A., Inc. v. Transp. Ins. Co.*, 500 F.3d 640, 644 (7th Cir. 2007) ("Implied claims that are not specifically alleged can be ignored."). They contend that Thermos' position is like the insured's in *Microplastics, Inc.*, where the Seventh Circuit found that the underlying complaint contained no details to support injury to third party property and the insured could not hypothesize about allegations to third party property merely because such allegations were not specifically foreclosed. *See* 622 F.3d at 812 ("Microplastics contends that because the language of the counterclaim does not specifically foreclose these hypothetical situations, the allegations 'potentially' implicate 'property damage' under the CGL policies and therefore trigger Amerisure's duty to defend under Illinois law."). The Court is cognizant of the *Microplastics, Inc.*'s court's warning not to find insurers "responsible for defending routine

---

[4] The insurers claim that any damages resulting from the loss of use of liquids or the damage to items in the diaper bag might be *de minimis* is irrelevant, as there is no requirement in the policies that the alleged damages in the complaint must meet a certain threshold amount before the duty to defend is triggered.

breach of warranty disputes between commercial manufacturers and their buyers" without sufficient allegations of property damage, *id.*, but here, Thermos is not just hypothesizing about potential property damage that would implicate coverage. Rather, it is relying on actual allegations in the *Milman* complaint of leaking bottles, spilled substances, and soaked items in a diaper bag and asking the Court to resolve any doubts concerning coverage in its favor. *See Ill. Tool Works, Inc. v. Travelers Cas. & Sur. Co.*, 26 N.E.3d 421, 428, 2015 IL App (1st) 132350, 389 Ill. Dec. 331 (2015) ("[V]ague, ambiguous allegations against an insured should be resolved in favor of finding a duty to defend."); *State Farm Fire & Cas. Co. v. Perez*, 899 N.E.2d 1231, 1235, 387 Ill. App. 3d 549, 326 Ill. Dec. 580 (2008) ("Both the policy terms and the allegations in the underlying complaint are liberally construed in favor of the insured, and any doubts and ambiguities are resolved against the insurer."). The Court agrees with Thermos and, because the underlying complaint is to be construed in favor of coverage, finds that it cannot ignore these explicit factual allegations of property damage. *See Milwaukee Mut. Ins. Co. v. J.P. Larsen, Inc.*, 956 N.E.2d 524, 530, 2011 IL App (1st) 101316, 353 Ill. Dec. 662 (2011) (where complaint generally alleged damage to condominium common elements, individual units, and personal property but did not expressly describe that damage, construing pleadings "liberally to allow for coverage, or, at least, the potential for coverage").

The Court acknowledges that certain situations may arise where stray allegations in an underlying complaint should not be found to give rise to a duty to defend. For example, courts have ignored allegations in an underlying complaint where they are "inconsistent with the larger complaint and the detailed allegations" concerning the insured's conduct. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Absolute Title Servs., Inc.*, No. 09 C 4165, 2011 WL 4905660, at *2–3 (N.D. Ill. Oct. 13, 2011) (disregarding negligence allegations where they were conclusory and

inconsistent with complaint's detailed fraud allegations); *see also Lemko Corp. v. Fed. Ins. Co.*, 70 F. Supp. 3d 905, 914 (N.D. Ill. Sept. 30, 2014) (rejecting allegation that defendants impaired integrity and availability of protected computers that parroted the statutory requirement of the claim at issue, lacked factual support, and was undermined by other allegations that the insured was able to use its computers for years without degradation of performance or availability).  This principle does not apply here, however, where the allegations of property damage and loss of use are consistent with the plaintiffs' main claim that Thermos' misrepresentations that the bottles were leak-proof caused them injury.  Similarly, this is not a case where the property damage allegations are only offered to illustrate the insured's alleged statutory violation and it is otherwise clear that the underlying plaintiffs have no standing to recover for such damage.  *See Health Care Indus. Liab. Ins. Program v. Momence Meadows Nursing Ctr.*, 566 F.3d 689, 694–96 (7th Cir. 2009) (allegations detailing injuries suffered by residents of nursing home did not provide for coverage as they were only included to "put a human touch" on False Claims Act allegations and plaintiffs had no standing to recover for any such injuries); *Crawford Labs., Inc. v. St. Paul Ins. Co. of Ill.*, 715 N.E.2d 653, 658, 306 Ill. App. 3d 538, 239 Ill. Dec. 899 (1999) (no duty to defend where "allegations of bodily injury were made not for recovery for the injured citizens, but rather, were offered as evidence of the problems that resulted from the" alleged statutory violation and statute did not provide remedy for bodily injuries); *Bituminous Cas. Corp.*, 578 N.E.2d at 1008 (where state had no standing to pursue physical injury claims, stating that allegations of "physical injury to State employees in that some had to be taken to the hospital . . . are made not for recovery for the injured employees but are offered as evidence of the problems that resulted from the defective HVAC system").  Here, no such standing problems exist, with the *Milman* plaintiffs able to pursue their own individual claims for property damage,

and even the putative class action posture of the complaint did not necessarily preclude such damages from being asserted if a class was certified.  *See Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) ("[T]he fact that damages are not identical across all class members should not preclude class certification.").  Thus, these cases do not help the insurers.

Alternatively, Hartford and Travelers ask the Court to take into account extrinsic evidence that allegedly demonstrates that the insureds had no duty to defend.  Although the Court generally may only compare the allegations of the complaint to the insurance policy at issue to determine the duty to defend, Illinois courts have carved out an exception allowing the Court to look beyond the underlying complaint if doing so would not determine an issue critical to the outcome of the underlying litigation.  *Wilson*, 930 N.E.2d at 1020–21; *see also Pekin Ins. Co. v. Pulte Home Corp.*, 935 N.E.2d 1058, 1064, 404 Ill. App. 3d 336, 343 Ill. Dec. 830 (2010) (considering answers to requests to admit, answer to counterclaim, and contract); *Fidelity & Cas. Co. of N.Y. v. Envirodyne Eng'rs, Inc.*, 461 N.E.2d 471, 473–74, 122 Ill. App. 3d 301, 77 Ill. Dec. 848 (1983) ("[I]f an insurer opts to file a declaratory proceeding, we believe that it may properly challenge the existence of such a duty [to defend] by offering evidence to prove that the insured's actions fell within the limitations of one of the policy's exclusions.").

Hartford first asks the Court to consider the underlying plaintiffs' filings in the *Milman* lawsuit in response to Thermos' motion to dismiss, in which the plaintiffs described the ascertainable loss at issue as the difference in value between the bottles as advertised (leak-proof) and the bottles received (not leak-proof).  *See* Doc. 68-4 at 8–10.  Hartford contends that this demonstrates that the *Milman* complaint was limited to seeking only benefit of the bargain damages, but the Court refuses to read the *Milman* plaintiffs' response to the motion to dismiss in such a restrictive manner.  Instead, the *Milman* plaintiffs were merely responding to Thermos'

argument in its motion to dismiss the *Milman* lawsuit that the complaint did not adequately allege an ascertainable loss, *see* Doc. 68-3 at 17–19, which is a term of art under New Jersey's Consumer Fraud Act that requires the plaintiff to show she has received something less than and different from what she reasonably expected in light of the defendant's representations, with the loss considered ascertainable as long as it is measurable (i.e. if the price to replace the product can be estimated). *Talalai v. Cooper Tire & Rubber Co.*, 823 A.2d 888, 898–99 (N.J. Super. Ct. Law Div. 2001) (citing *Miller v. Am. Fam. Publishers*, 663 A.2d 643, 655 (N.J. Super. Ct. Ch. Div. 1995)); *see also Smalaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 99 (D.N.J. 2011) (for loss to be "ascertainable," consumer must "quantify the difference in value between the promised product and the actual product received"). As a result, the *Milman* plaintiffs' response is not analogous to that of the underlying plaintiffs in *Cincinnati Insurance Co. v. H.D. Smith Wholesale Drug Co.*, where the underlying plaintiff clearly admitted in a motion to remand that no damages were being sought for bodily injury. No. 12-3289, 2015 WL 4624734, at *7 (C.D. Ill. Aug. 3, 2015) (finding that underlying plaintiff's admission in motion to remand regarding the damages being sought could be considered to limit complaint's damages allegations for duty to defend); *see also Avent*, 612 F.3d at 611, 615 (acknowledging underlying plaintiffs' admission in response to motion to dismiss that they were not seeking to recover for bodily injury). Thus, the *Milman* plaintiffs' response to the motion to dismiss their complaint does not change the Court's conclusion.

Hartford and Travelers also ask the Court to consider various documents memorializing the settlement in the *Milman* lawsuit. But these go to the material issue of what damages would ultimately be recovered in the litigation, albeit by way of settlement as opposed to through a decision on summary judgment or at trial. The fact that the parties agreed to settle the case by

providing recovery only for the replacement cost of the bottles does not demonstrate that the complaint did not potentially encompass damages because of property damage. Rather, it shows that the parties, in seeking a resolution of the lawsuit, determined that they would structure their settlement in this fashion. It is true that in the motion for preliminary approval, the plaintiffs represented that it was their position that all class members were "injured when they paid money to purchase the Foogo® Straw Bottles," so that "[b]ased on the claims alleged," they "seek the same relief for the alleged wrongful conduct." Doc. 68-7 at 21. But because this was a position taken in seeking approval of a settlement, this goes to determining the duty to indemnify, not the duty to defend. *See Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339, 350–52 (7th Cir. 2010) (in determining duty to indemnify where underlying litigation has settled, insured must demonstrate that a primary focus of the settlement was a claim covered by the insurance policy).

Thus, after having considered the parties' arguments on the issue, the Court cannot say that it is "clear from the face of the underlying complaint" that there are no allegations of damages arising from "property damage" and moves on to consider the other arguments raised in the parties' motions.

### B. Occurrence

The insurers argue that even if the *Milman* complaint included a claim for damages arising from "property damage," that "property damage" was not caused by an "occurrence" and so the duty to defend was not triggered. An "occurrence" is defined in all policies as an "accident." Doc. 68-11 at 85; Doc. 68-12 at 78; Doc. 18-4 at 32; Doc. 18-5 at 30; Doc. 18-6 at 28; Doc. 18-7 at 28; Doc. 18-8 at 20. Although "accident" is not defined in the policies, Illinois courts have defined the term as "an unforeseen occurrence, usually of an untoward or disastrous

character or an undesigned, sudden, or unexpected event of an inflictive or unfortunate character." *Nautilus Ins. Co. v. Bd. of Dirs. of Regal Lofts Condo Ass'n*, 764 F.3d 726, 731 (7th Cir. 2014) (quoting *Westfield Nat'l Ins. Co. v. Cont'l Cmty. Bank & Trust Co.*, 804 N.E.2d 601, 605, 346 Ill. App. 3d 113, 281 Ill. Dec. 636 (2003)). Additionally, "[t]he natural and ordinary consequences of an act do not constitute an accident." *Id.* (alteration in original) (quoting *Westfield*, 804 N.E.2d at 605). In order for an incident to be considered an "accident," then, there must be damage to something other than the defective product. *See J.P. Larsen, Inc.*, 956 N.E.2d at 532 (stating that "damage to something other than the project itself *does* constitute an 'occurrence' under a CGL policy," and providing as examples "damage to a homeowner's furniture, clothing and antiques as a result of the insured's faulty placement and insulation of plumbing and water pipes"); *Stoneridge Dev. Co. v. Essex Ins. Co.*, 888 N.E.2d 633, 653, 382 Ill. App. 3d 731, 321 Ill. Dec. 114 (2008) ("[C]onstruction defects that damage something other than the project itself will constitute an 'occurrence.'"); *Viking Constr. Mgmt., Inc. v. Liberty Mut. Ins. Co.*, 831 N.E.2d 1, 16, 358 Ill. App. 3d 34, 294 Ill. Dec. 478 (2005) (in the building construction context, for coverage to exist, there must be damage to something other than the building for an "occurrence" or an "accident" to be found). Applied to this case, damages to the bottles themselves would not be considered an "accident." *See Diamond State Ins. Co. v. Chester-Jensen Co.*, 611 N.E.2d 1083, 1092, 243 Ill. App. 3d 471, 183 Ill. Dec. 435 (1993) ("The mere failure of a product to perform as warranted is not beyond the realm of expectation and is foreseeable by the parties. . . . While such failure is most likely to be unintentional, it cannot be considered an 'accident' within the meaning of the policy because the 'natural and ordinary consequences of an act do not constitute an accident.'" (citation omitted)). But the alleged loss of use of milk, juice, or other liquid, or damage to the contents of a diaper bag in

which the defective bottle is placed is sufficient to constitute an "occurrence," as this damage occurs not to the product itself but to other property. *See J.P. Larsen, Inc.*, 956 N.E.2d at 532.

### C. Exclusionary Clauses

The insurers also argue that several exclusions in their policies preclude coverage. Where an insurer denies coverage based on an exclusion, the exclusion's application must be "clear and free from doubt." *Panfil v. Nautilus Ins. Co.*, 799 F.3d 716, 719 (7th Cir. 2015) (quoting *Hurst-Rosche Eng'rs, Inc. v. Commercial Union Ins. Co.*, 51 F.3d 1336, 1342 (7th Cir. 1995)). The insurer bears the burden of proving that an exclusion applies and must do more than just recite exclusions in order for the Court to find an excuse of the duty to defend. *Panfil*, 799 F.3d at 721; *Penda Corp.*, 974 F.2d at 833 ("For an exclusionary provision to be properly raised before the district court, it is not enough for an insurance company merely to recite it to the court in a long description of the policy; it must explain to the court why the provision is applicable in the case before it and how the provision operates to exclude the disputed claim from coverage under the policy." (quoting *Ohio Cas. Ins. Co. v. Bazzi Constr. Co.*, 815 F.2d 1146, 1149 (7th Cir. 1987))). Although the insureds generally give short shrift to the allegedly applicable exclusions—doing little more than citing the provision and providing a case citation or two where the exclusions have been applied before—the Court will nonetheless briefly address them here.

First, the insurers argue that that the policies' "expected or intended injury" exclusion applies.[5] This exclusion overlaps with the "occurrence" requirement. *See State Farm Fire &*

---

[5] National Fire only raises this argument in its reply brief to its motion for judgment on the pleadings. *See* Doc. 84 at 12. Ordinarily, arguments raised for the first time in a reply brief are considered waived. *Dexia Credit Local v. Rogan*, 629 F.3d 612, 625 (7th Cir. 2010). But because the argument overlaps with National Fire's argument concerning whether there was an "occurrence," which it made in its opening brief, and Thermos had an opportunity to respond to Hartford's and Travelers' arguments on this exclusion, the Court will consider whether the exclusion applies with respect to all insurers' policies.

*Cas. Co. v. Young*, 968 N.E.2d 759, 767, 2012 IL App (1st) 103736, 360 Ill. Dec. 266 (2012); *Aetna Cas. & Sur. Co. v. Freyer*, 411 N.E.2d 1157, 1159, 89 Ill. App. 3d 617, 44 Ill. Dec. 791 (1980) (noting that, in addition to requiring bodily injury or property damage to have been caused by an occurrence, "insurance companies, in order to make this limitation of coverage absolutely clear and inescapable, include an exclusion for 'intentional injuries' caused by the insured"). Thus, the Court adopts its analysis with respect to why the underlying complaint potentially alleges an "occurrence" in finding that the "expected or intended injury" exclusion is not applicable here. *See Erie Ins. Exch. v. Imperial Marble Corp.*, 957 N.E.2d 1214, 1220, 2011 IL App (3d) 100380, 354 Ill. Dec. 421 (2011) (using same analysis on "expected or intended injury" exclusion and whether underlying complaint alleges an occurrence).

Next, the insurers argue that several business risk exclusions apply. All insurers argue that exclusions 2(k)—"[p]roperty damage" to "your product" arising out of it or any part of it"— and 2(m)—as relevant here, "property damage" to "property that has not been physically injured" arising out of a "defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work'"—apply. Doc. 68-11 at 72; Doc. 68-12 at 65; Doc. 18-4 at 23; Doc. 18-5 at 21; Doc. 18-6 at 19; Doc. 18-7 at 19; Doc. 18-8 at 11. Travelers also argues that its exclusion 2(j)(6)—for "property damage" to "[t]hat particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it"—and 2(l)—for "property damage" to "'your work' arising out of it or any part of it and included in the 'products-completed operations hazard'"—apply. Doc. 18-4 at 22–23; Doc. 18-5 at 20–21; Doc. 18-6 at 18–19; Doc. 18-7 at 18–19. These business risk exclusions are "all premised on the theory that liability policies are not intended to provide protection against the insured's own faulty workmanship or product, which are normal risks associated with the conduct of the

insured's business" and instead that the insurance is to "afford coverage for damage to other property caused by the insured's work or product." *U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926, 934, 144 Ill. 2d 64, 161 Ill. Dec. 280 (1991). Because the Court has found the *Milman* complaint alleged a possibility of damage to property other than Thermos' own bottles and was not limited to the economic loss of those bottles, these business risk exclusions do not apply. *See Auto Owners Ins. Co. v. Hagler*, No. 13-cv-884-JPG-PMF, 2015 WL 3862713, at *7–8 (S.D. Ill. June 22, 2015) (although "your work" exclusion would exclude coverage for some alleged damages if insured was ultimately found liable, because the complaint alleged damages beyond insured's work, the exclusion did not negate the duty to defend); *cf. State Farm Fire & Cas. Co. v. Tillerson*, 777 N.E.2d 986, 992–93, 334 Ill. App. 3d 404, 268 Ill. Dec. 63 (2002) (finding business risk exclusions applied where there were no allegations of harm to other property and persons and the underlying complaint only sought damages for the insured's improper workmanship).

### D. Summary

To summarize, the Court finds that the *Milman* complaint contained allegations that raised the potential for damages arising from "property damage" caused by an "occurrence." None of the policy exclusions raised by the insurers in their motions apply to preclude coverage. Thus, based on the facts before it, the Court would find that the insurers had a duty to defend Thermos.[6] Both Hartford and Travelers, however, have indicated that they reserve the right to raise additional coverage arguments that have not been addressed in these motions. *See* Doc. 79 at 3 n.2; Doc. 65 at 6 n.2. The Court is not entirely clear as to how these arguments fit into the

---

[6] Based on this analysis, Hartford's argument that judgment is appropriate in its favor on Thermos' counterclaims for declaratory judgment and breach of contract need not be addressed. As Hartford has framed that issue, it was dependent on a finding for Hartford on the duty to defend issue. *See* Doc. 67 at 13 (arguing that because Hartford has no duty to defend, Thermos' counterclaims fail).

duty to defend analysis (e.g., whether they are policy defenses that could not be asserted if estoppel applies or why these other arguments were not raised in connection with the motions presently before the Court). Therefore, the Court will refrain from making a final determination as to whether the insurers had a duty to defend and whether that duty to defend was breached until the insurers make any additional appropriate arguments with respect to the duty to defend.[7]

## II.     Estoppel

Thermos requests that the Court find that the insureds are estopped from denying coverage for the *Milman* settlement because they wrongfully refused to defend Thermos in the underlying lawsuit and did not adequately protect themselves by filing timely declaratory judgment actions. *See Bartkowiak v. Underwriters at Lloyd's, London*, --- N.E.3d ----, 2015 IL App (1st) 133549, ¶ 47, 395 Ill. Dec. 709 (2015) (estoppel provides that if insurer does not seek declaratory judgment or defend suit under reservation of rights "and is subsequently found to have wrongfully denied coverage, then it may not later assert policy defenses to avoid coverage"). Estoppel does not apply, however, where the insurer prevails in arguing that it has no duty to defend. *Emp'rs Ins. Co. of Wausau v. Ehlco Liquidating Trust*, 708 N.E.2d 1122, 1135, 186 Ill. 2d 127, 237 Ill. Dec. 82 (1999) ("Application of the estoppel doctrine is not appropriate if the insurer had no duty to defend, or if the insurer's duty to defend was not properly triggered."); *Bartkowiak*, 2015 IL App (1st) 133549, ¶ 48 ("[T]he estoppel doctrine cannot create coverage where none existed in the first place.").

In addition to the fact that the Court has not yet finally determined whether the insurers had a duty to defend, the circumstances surrounding whether estoppel applies to each insurer would require a separate analysis and additional factual development. For example, for Hartford,

---

[7] To the extent the Court has misunderstood whether additional arguments remain as to the duty to defend, the insurers should so inform the Court at the next status hearing.

the issue is whether Hartford filed its declaratory judgment action within a reasonable time. *Regal Lofts Condo. Ass'n*, 764 F.3d at 733. That determination depends on the amount of time that elapsed between Thermos' tender and the filing of this action, in addition to the status of the underlying suit at the time this action was filed. *See Cent. Mut. Ins. Co. v. Kammerling*, 571 N.E.2d 806, 810, 212 Ill. App. 3d 744, 156 Ill. Dec. 826 (1991). As relevant to this case, that entails determining whether Hartford was aware of the imminence of settlement when it filed this declaratory judgment action one week before the settlement conference in the *Milman* lawsuit. *See id.* (ten-month delay in filing declaratory judgment action unreasonable where insurer filed suit after being advised of fact that underlying suit could be settled within policy limits). For National Fire, which contends that it only received notice of the filing of the initial New Jersey lawsuit and nothing after, a question arises as to whether National Fire was even given the opportunity to defend Thermos. *See Ehlco*, 708 N.E.2d at 1135 (estoppel not appropriate "where the insurer was given no opportunity to defend"). Thus, the Court defers ruling on whether the insurers are estopped from contesting coverage for the *Milman* settlement.

## III.    Section 155 Damages

Section 155 damages are appropriate if an insurer's actions with respect to a claim made under a policy are "vexatious and unreasonable." *Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897, 902, 174 Ill. 2d 513, 221 Ill. Dec. 473 (1996). But they may not be awarded if "(1) there is a bona fide dispute concerning the scope and application of insurance coverage; (2) the insurer asserts a legitimate policy defense; (3) the claim presents a genuine legal or factual issue regarding coverage; or (4) the insurer takes a reasonable legal position on an unsettled issue of law." *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 200 F.3d 1102, 1110 (7th Cir. 2000) (citations omitted). A "bona fide" dispute is one that is "[r]eal, actual, genuine, and

not feigned." *Am. States Ins. Co. v. CFM Constr. Co.*, 923 N.E.2d 299, 308, 398 Ill. App. 3d 994, 337 Ill. Dec. 740 (2010) (alteration in original) (quoting Black's Law Dictionary 177 (6th ed. 1990)).  Determining whether conduct is vexatious or unreasonable is a factual question determined by looking at the totality of the circumstances.  *See Med. Protective Co. v. Kim*, 507 F.3d 1076, 1086 (7th Cir. 2007).

Hartford seeks summary judgment on Thermos' request for section 155 damages, arguing that even if the Court finds that Hartford had a duty to defend, there was at the least a bona fide coverage dispute.  National Fire similarly requests judgment on this claim in its motion for judgment on the pleadings.  Travelers also argues in response to Thermos' motion for judgment on the pleadings that Thermos is not entitled to section 155 damages because there was a bona fide coverage dispute.  Thermos fails to respond to any of the insurers' arguments regarding section 155 damages, which effectively amounts to a concession on the issue.  *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (failure to respond to an argument results in waiver).  Even had Thermos not conceded the issue, the request for section 155 damages is not appropriate.

An insurer is not liable for section 155 damages "merely because it litigated and lost the issue of insurance coverage." *Am. States Ins. Co.*, 923 N.E.2d at 308.  Here, although the Court has found that the *Milman* complaint included allegations that raised a possibility of coverage, the insurers had a bona fide reason to challenge coverage, as even the Court has noted that the issue is a close and difficult one.  Thus, Thermos' request for section 155 damages is inappropriate and judgment will be granted for the insureds on those claims.  *See John T. Doyle Trust v. Country Mut. Ins. Co.*, 8 N.E.3d 490, 500, 2014 IL App (2d) 121238, 380 Ill. Dec. 320 (2014) (finding bona fide dispute despite fact that court ruled against insurer); *Am. Auto Ins. Co.*

*v. B.D. McClure & Assocs.*, No. 09 C 1589, 2011 WL 211204, at *8 (N.D. Ill. Jan. 21, 2011)

(section 155 damages not appropriate where a bona fide dispute existed over coverage).

## CONCLUSION

For the foregoing reasons, National Fire's motion for judgment on the pleadings [61] is

denied. Travelers' motion for judgment on the pleadings [64] is granted in part and denied in

part. Hartford's motion for summary judgment [66] is granted in part and denied in part.

Thermos' motions for judgment on the pleadings [69, 71, 73] are denied without prejudice.

Judgment is entered for Hartford, National Fire, and Travelers on Thermos' request for section

155 damages in Thermos' counterclaim against Hartford [16] and third party complaint against

National Fire and Travelers [18].

Dated: November 18, 2015

SARA L. ELLIS
United States District Judge